*381 The opinion of the Court was delivered by
Whitner, J.
The plaintiffs, factors .in Charleston, were authorized to buy cotton for the defendants, merchants in Liverpool. Five hundred bales were bought and shipped, which the defendants, under the circumstances, declined to accept, whereupon the cotton was sold at considerable loss, and this action was brought and a recovery had in the Court below for the difference.
The precise character of the contract between these parties, the extent and effect of alleged deviations therefrom, having reference to the relation they sustained to each other, have undergone a searching analysis by appellants’ counsel.
The grounds of appeal complain of a departure by the agents from the instructions of their principals, whereby the latter, it is insisted, were released from their obligation to fulfil their contract, and, consequently, that no cause of action had accrued. It is urged that the act of the plaintiffs, in a given instance, was inconsistent with any claim of agency ; that the true construction of this contract was wholly matter of law, and, consequently, for the Court alone ; and error is attributed to the presiding Judge in his instructions to the jury in certain particulars enumerated. To these grounds and the facts of the case, reference will be made in their order, without a detailed narrative, as the report of the Judge is full and minute, presenting the entire transaction. As a general proposition, the instructions given constitute the leading outlines of the contract, and the agent, who seeks a recourse on his principal, must show that he has conformed. As it is said, “ if the order or power given marks precisely what is to be done, he who accepts and executes it ought to keep close to what is prescribed in it.” (1 Dom. B. 1, Tit. 15.) The primary obligation of an agent, whose authority is limited by instructions, is to adhere faithfully to those instructions in all cases to which they ought properly to be applied. (Rundle vs. Moore, 3 Johns. Cas. 36.) Very exact conformity to orders is required in the execution of a commission to purchase, especially as to price, quality or kind, and the destination proper of the thing purchased. Slight deviations in these particulars may justify a repudiation *382 of the contract. (Paley on Agency, 28.) These are ingredients essential in their character, and is referred to now only as illustrative of general principles. The deviations here complained of are as to other points and involve other questions, and there are many modifications of general principles applicable to the exigencies of such agencies. Mr. Story, in his work on Agency, sums up one of his chapters by saying, “ that there are certain duties appropriate and belonging to certain classes of agencies resulting either from the general usages of business, or the habit of dealing between the parties, or the special functions to be performed, which cannot be deemed of universal application or obligation.” (Story on Agency, § 209.)
The alleged departures from instructions are enumerated in the first ground, and are :
First. In not sending the bills of lading directly to Lee & Co. instead of enclosing to one of their own firm, then supposed to be in New York.
Second. In requiring Lee & Co. to negotiate with E. L. Tren-holm, the individual above alluded to, instead of drawing at once on Lee & Co. as they had been authorized.
Third. In requesting, subsequently, a payment into Bank by Lee & Co. at their earliest convenience.
Fourth. In drawing directly on defendants subsequently, when Lee & Co. had declined to act in the premises without further advices, &c.
As to the mode of transmitting the bill of lading, the instructions were silent, and the question of course presents itself, if one of several modes be selected, and delay ensues, shall the agent be held to answer for the casualty because the adoption of another might have been more fortunate ? Had it been committed to one of the partners going forward, a like disaster may have befallen it, and yet, I presume, on the score of prudence, such a course would have been regarded well advised. In the absence of direction from the employer, the Judge subjected this act of plaintiffs to the double test, whether it was in conformity with usage. *383 and whether, in fact, in this particular, it was bona fide on the part of plaintiffs.
These were considerations properly arising, such as were appropriate for the jury, and when found by them, authorize a legal conclusion adverse to appellants’ proposition.
On the Circuit, the Judge instructed the jury that plaintiffs had no right to change the mode of payment, and if they did so, it was a disaffirmance of the contract, which discharged the defendants. This points to the second and third enumerations contained in the first ground of appeal. The letter of instruction gave authority to draw on Lee & Co. of New York, at from 10 to 60 days sight, as may be most convenient to plaintiffs. Lee & Co. promised to give due honor to such draft on the receipt of invoice and bills of lading. When the bill of lading was forwarded to Trenholm, and instead of drawing on Lee & Co. they were authorized to negotiate with him for the amount, here was no new term imposed. It was, in effect, but a postponement to draw until, by personal interview, the day, within the instructions, best suited to the convenience of Lee & Co., might be ascertained, beneficial to the drawees and in no way prejudicial to the principals, or outside of their instructions. If that was the design, and it is a legitimate inference, the conclusion follows and excludes the idea of deviation from the contract in its greatest strictness. So again, when the bill of lading was subsequently forwarded, and Lee & Co. requested to pay the amount at their earliest convenience into Bank to the credit of the plaintiffs, we are to inquire wherein was the deviation. Lee & Co. were to accept and pay, by original agreement, by draft at from 10 to 60 days sight, on receiving the invoice and bills of lading. By substitution, the latter were sent, these being essential to Lee & Co. and the payment as to time was Submitted to their convenience. A Bank was indicated as a suitable recipient for the fund, instead of the holder of a bill of exchange, and the day of payment to be fixed by the debtor at his earliest convenience. instead of the creditor at the shortest moment his cupidity or apprehension might suggest. Unless there is some magic in *384 a bill of exchange, unknown to this Court, the consequences sought by this defence should not be permitted. Certainly the declension of Lee & Co. was not put on this footing, nor can an avoidance of the contract by these defendants be sanctioned on this account. The remaining objection taken in the first ground, because the defendants were directly drawn on subsequently, cannot avail. Lee & Co. had refused to receive the bill of lading or pay for the cotton, and hence the propriety and necessity of resorting to defendants. The call upon them to accept or repudiate was proper and indispensable. The second ground of appeal maintains that the act of changing the bills of lading and forwarding to their own partner in New York, was, of itself, inconsistent with any claim of agency, and that motive could in no way determine its character. It will be perceived, by a careful review of the charge of the presiding Judge, that, in the consideration of this question, the double aspect, in which it was treated on Circuit, rendered the rule more stringent as to the claim set up by plaintiffs, and, to the extent it operated, was beneficial to the defendants.
The plaintiffs were held to shew, not only that the act of changing the bills of lading was, of itself, consistent, but that in its performance the purpose was pure. The motive of the party belonged to the jury, and so, too, the question of usage upon which the act itself and by itself was to be viewed. The reason given was, in their judgment, sufficient to rescue the act from suspicion, and as a question of commercial usage, both in reference to the proper mode of taking out the bill of lading originally, which is brought up in the third ground, and of the right' of the agent to change it, the proof was direct and positive. And this also is established by the verdict.
The presiding Judge held that, as to the bills of lading, the instructions of the principals were silent. Much of necessity must often be left to the discretion of the agent, and if, in the absence of instructions, there be a known usage of trade, or a mode of transacting business applicable to a particular agency, in such *385 case the agent is not only permitted, but it is his duty to conform to it. (Story on Agency, § 199.)
If the order or power be indefinite, the agent may set such bounds, or give to it such extent, as may reasonably be presumed to be agreeable to the intention of the person who makes the order or gives the power, whether it be with regard to the thing itself which is to be done, or the way of doing it. (1 Dom. B. 1, Tit. 1.) This is a rule of civil law and founded in good sense. What better exponent of the nature and extent of implied authority can be resorted to, I cannot conceive. They are not looked to for the purpose of enlarging the powers of the agent, but for the purpose of interpreting the powers conferred. It cannot be admitted that these bills of lading, as soon as taken out, were without and beyond the control of the agent, thereby in • vesting a full and complete title in another, analagous, as it has been insisted, to the transaction of bargain and sale, wherein the execution of the deed passes the title. The right to the possession, management and control, with which these plaintiffs were entrusted and could properly exercise over this cotton, resulting from the very nature, ends and design of their agency, constitutes an essential difference. The analogy cannot illustrate, at least until the rights of third persons attach.
Without protracting these views, perhaps already extended beyond the occasion, I will only add, the original instruction of the defendants pointed to Lee & Co. as friends who would honor the drafts authorized, and that Lee & Co. in assuming this very responsible position, did so with a qualification, that the invoice and bills of lading were to be forwarded simultaneously. This may therefore be regarded as a part of the undertaking of plaintiffs, but for no good reason unless made available by proper endorsements. The mistake, then, was in the first bills of lading taken out, and if it had not been corrected, might have justly subjected the plaintiffs to censure and it might be to loss, if loss had ensued, by this deviation.
The change was competent, prudent and proper. The bona Jides of the plaintiffs in certain acts, and their consistency with *386 commercial usage, have each been established by the verdict of the jury, who were correctly instructed by the Judge on the Circuit. The motion for new trial is therefore dismissed.
O’Neall, Evans. Frost and Withers, JJ. concurred.

Motion dismissed.